## The Commonwealth *versus* The City of Boston.

By the *St.* 1803, *c.* 111, annexing South Boston to Boston, the selectmen of Boston were authorized " to lay out such streets and lanes" in South Boston, as in their judgment would be for the common benefit of the proprietors of the land, and of the town of Boston, provided " that the town of Boston shall not be obliged to complete the streets laid out by their selectmen pursuant to this act, sooner than they may deem it expedient so to do." At a meeting of the selectmen of Boston, on February 27, 1805, a street was laid out in pursuance of such statute. On November 7, 1831, the mayor and aldermen (successors of the selectmen of Boston) passed an order, that such street " should be made passable," " provided, that a sum not exceeding $500 be expended during the current year." It was *held*, that such order of the mayor and aldermen was a declaration of the expediency of completing the street for public use; that the city were thereupon bound to complete it within a reasonable time; that the question of reasonable time was a question of law, to be determined by the circumstances of the case; and that the city were liable to indictment for not keeping such street in repair.

THIS was an indictment for not repairing a public road, common highway and street in South Boston.

The trial was before *Wilde* J.

By the *St.* 1803, *c.* 111, passed in March 1804, annexing the tract of land now called South Boston to the town of Boston, the selectmen of Boston were authorized " to lay out such streets and lanes" in South Boston, as, in their judgment, would be for the common benefit of the proprietors of the land, and of the town of Boston," " a reasonable attention being paid to the wishes of the proprietors, provided only, that no damage or compensation shall be allowed to any proprietor for such streets and lanes, as may be laid out within twelve months from the passing of this act ; and provided also, that the town of Boston shall not be obliged to complete the streets laid out by their selectmen, pursuant to this act, sooner than they may deem it expedient so to do."

At a meeting of the selectmen of Boston on February 27, 1805, the street in question, together with divers others, was, in pursuance of such statute, laid out according to a certain plan, which was placed on record No order or vote of the town or city of Boston was produced to prove, that the town or city officers had ever expressly determined that it was expedient to accept and complete the street in question, as had been done in other cases under such statute.

On November 7, 1831, the mayor and aldermen, (the successors of the selectmen,) upon the petition of divers individuals residing in South Boston, passed an order that the street in question "should be made passable from Turnpike to Dorchester Street ; provided, that a sum not exceeding five hundred dollars be expended during the current year."

Upon these facts it was contended, on the part of the defendants, that the city of Boston was not liable under this indictment, the statute having given them the right to decide when it was expedient to complete this and the other streets in South Boston, and they never having so decided in respect to the street now in question ; that the order of the mayor and aldermen, passed on November 7, 1831, was not in law a determination to that effect under the statute, but only a conditional appropriation in part towards completing the street in such time as the city government should deem expedient.

For the purposes of the trial, the jury were instructed, that if the facts were proved, they should return a verdict for the Commonwealth.

The jury returned a verdict for the Commonwealth.

The defendants moved for a new trial, on the ground of a misdirection by the Court in matter of law.

*J. Pickering*, for the defendants, cited *Commonwealth* v. *Westborough*, 3 Mass. R. 406 ; *Lawton* v. *Commissioners of Cambridge*, 2 Caines's R. 179 ; *Parks* v. *Boston*, 8 Pick. 218 ; *St.* 1796, *c.* 58, § 6.

*Austin*, (Attorney-General,) and *S. D. Parker*, (County Attorney,) for the Commonwealth.

SHAW C. J. delivered the opinion of the Court. This is an indictment against the city for neglect of duty, in not keeping a certain public way in repair, in that part of the city called South Boston.

A preliminary question is made, which is certainly of great importance to that large and growing section of the city, and which requires the attention of the Court. It is contended on the part of the city, that by the operation of the act annexing part of Dorchester to Boston and other acts in relation to the subject, the streets in South Boston are neither highways nor town-ways, technically, that they are ways of a

*Margin notes:* Commonwealth *v.* Boston.    *March 30th*    *April 8th*

Common-
wealth
*v.*
Boston.

peculiar character in nature of private ways, established under a compact between the original proprietors of the land there and the city, and that consequently the city is not liable to an indictment, for not making and keeping them in repair. It is highly important to the safety and convenience of the citizens, that the duty and obligation of the city in this regard, should be known and understood, in whatever way the law fixes it.

It was truly stated in the argument, that the question must depend principally upon the construction of *St.* 1803, *c.* 111, passed in March 1804, annexing part of Dorchester to Boston. But in order correctly to understand the meaning and intent of that statute, it may be necessary to resort to other acts in force when that act was passed. This statute, § 3, provides, that the selectmen of the town of Boston should be authorized to lay out such streets and lanes, through the said tract, as, in their judgment, might be for the common benefit of the proprietors and of the town of Boston.

It is now considered, that the distinction between a town-way and a highway, rather refers to the manner in which they are originally established, than to their legal character when established ; that the public at large have the same beneficial use of a town-way as of a highway ; that it is equally the duty of the town to keep them in repair ; and that an indictment will lie, for a failure in the performance of this duty. The question then is, whether the streets in question have the character of town-ways, or of highways.

It is to be considered, that prior to the act in question, the general law, providing for the mode of establishing highways and town-ways in the towns of this Commonwealth genera'ly, had been superseded and changed, in the town of Boston, by a course of special legislation, vesting the power exclusively in the selectmen. By the *St.* 1799, *c.* 31, § 3, the selectmen of the town of Boston, for the time being, whenever in their opinion the safety or convenience of the inhabitants should require it, were empowered to lay out or widen any street, lane or alley of the town ; and it provided, that the owners of land or buildings, taken or removed for the purpose, should receive compensation, in the manner pointed out by the act directing the method of laying out highways. Two im-

portant inferences are to be drawn from this act, bearing upon the present question ; the one is, that the whole power of laying out both highways and town-ways, which by the general laws of the Commonwealth is vested in other bodies, in Boston was vested exclusively in the selectmen ; and this has been since transferred to the mayor and aldermen. The second is, that it adds a legal recognition to what indeed seems clear enough on other grounds, the fact namely, that the terms, " streets and lanes," when used as applicable to this city, are deemed to be synonymous with public ways or highways.

Such was the state of the law, as it affected this city, when the tract in question was annexed to it, and the selectmen were authorized to lay out such streets and lanes through it, as in their judgment the common benefit of the proprietors and of the town might require, the act further stating, that a reasonable attention should be paid to the wishes of the proprietors. This authority was granted under two provisoes ; first, that no damages or compensation should be allowed to any proprietor, for such streets and lanes, as should be laid out within one year from passing the act ; and second, that the town of Boston should not be obliged to complete the streets laid out by their selectmen, pursuant to that act, sooner than they might deem it expedient to do so.

Taking all the provisions of this act together, we think the intent of the legislature will appear manifest, and leave no reasonable doubt of the construction of the act. It was the obvious purpose of the annexation, to add a tract of land to the town for building lots ; and it was obviously necessary to the interests of the proprietors, and the accommodation of the public, that suitable highways should be laid through it. It was important to the proprietors, that this should be at once and upon a general and comprehensive plan, before they commenced building, in order to know how to place their buildings ; and this object was insured, by the proviso, that such streets should be laid out at any time within one year, without claim for damages. Accordingly it appears by the facts agreed, that the streets were laid out within one year, and a plan of them recorded. But it was equally obvious, that

though a matter of convenience to have the ways thus laid out prospectively, to meet the exigencies of public improvement, as actual building and population should extend in many parts of the tract, the public exigencies might never be such as to require highways, and in many others not till a remote future period, and it would be unreasonable to require the town to be at the heavy expense of making highways, which public convenience might never require, or to make them earlier or faster, than public convenience should require them.

Taking these provisions together then, we think the result is this, that the selectmen, then having the full power and authority to lay out public ways within the city, should lay out within one year such ways within the newly acquired territory, as they might judge that public safety and convenience would ultimately require. No special mode being pointed out in which this should be done, it was to be done in the manner that other highways were laid out, that is, by suitable votes, specifying the *termini*, the direction, and limits, and recording such votes in books kept for that purpose. This was done. This was an effectual appropriation of the soil over which they were laid, to public use, as against the proprietors, and made complete public ways, subject only to the second proviso. Under the general law then in force, the town would have been obliged immediately to make the roads, fit them for public use, and keep them in repair, but for the reservation in that proviso. The effect of this was to exempt the town from this duty, until they should by some further act, by themselves, or by their authorized agents, deem and declare it expedient to complete them for public use. This placed it entirely in the power of the town, to act upon this consideration of expediency ; they might declare this expediency in regard to the whole or any part of a street so laid out, they might declare it expedient to complete such street forthwith, or at any suitable period, to be fixed for that purpose. But when such expediency is declared by the city, by its competent agents and officers, then by force of the act cited, and the former doings of the selectmen, the way forthwith becomes in all respects a legal public way, and then the duty and obligation of the city attach to it, which is, to prepare and fit it for

public use, so as to make it safe and convenient, within a reasonable time, and to repair it and keep it in like condition afterwards. If not made within such reasonable time, the city must be responsible as for a neglect of duty. What would be a reasonable time, would be a question of law, to be determined by the circumstances of the case. But under the entire and unlimited power of the city, by its officers charged with that department of public duty, to judge of and determine the expediency of completing one of these streets for public use, as the progress of settlement, and other exigencies may require, they may decide prospectively, that at a time fixed, such street shall be adopted, and actually made a public way, and thus take as much time as may be necessary to prepare such street for public use. The city are therefore subjected to no unreasonable burden, or extraordinary duty, by the construction adopted.

The Court, upon these views, are of opinion, that the position taken by the counsel for the city, that they are not liable to indictment, for want of repair of these streets, because they are of a peculiar and extraordinary character, cannot be maintained. The manner in which they are established is somewhat peculiar, but when established they become public ways, the right of the public to the use of them, and the obligation of the city to make, repair and maintain them, attach, and the common and ordinary mode of enforcing this obligation applies. This point was incidentally considered in a recent case, respecting Cambridge common. A special act, on the application of individual petitioners, authorized certain commissioners to inclose part of Cambridge common, and for that purpose to discontinue certain ways, and to lay out others. One argument against the regularity and validity of the act was, that no person was bound to keep these substituted ways in repair. But the Court were of opinion, that being public ways laid out by competent legal authority, though not by the ordinary tribunal, the obligation of the town would attach, and they would be bound to keep them in repair.

2. The second question is, whether the vote of 1831 did declare the expediency of making and completing this street

for public use ; and the Court are of opinion, that it must be so considered.    It was the act of the mayor and aldermen, to whom all the powers of the former board of selectmen are transferred by the city charter.    It declared, that the street in question " should be made passable."    The language is to be construed in reference to prior proceedings, and the existing law, which they must be presumed to have had in view. By force of the existing law, it was already laid out as a high- way potentially, to become so actually whenever the city au- thorities should deem it expedient.    An order, that it be made passable as a street, we think, was such a declaration. There was nothing in the proviso to restrain this operation of the order, as a declaration of the expediency of completing this street for public use.    The proviso declared, that not more than a specified sum should be applied to that purpose, within a limited time.    But more than two years elapsed after that time, before the indictment was found.    If the city had intended to defend on the ground, that they had pro- ceeded, and were proceeding, with reasonable diligence, to make and complete this highway, and that they had not had reasonable time, after passing the order, to complete it, they should have set forth the facts necessary to maintain such defence, that the Court might judge of them.

*Motion for a new trial overruled.*